In re Lewis S. ADAMS & Jacquelyn
K. Adams, Debtors.

Lewis ADAMS, Plaintiff,

v.

GRAND TRAVERSE BAND OF OTTA-
WA AND CHIPPEWA INDIANS ECO-
NOMIC DEVELOPMENT AUTHORI-
TY, et al. Defendants.

Bankruptcy No. HT 91–81940.
Adv. No. 91–8489.

United States Bankruptcy Court,
W.D. Michigan.

Oct. 28, 1991.

Barry L. Levine, Traverse City, Mich., Brooks Darling, Sp. Counsel, for Lewis Adams.

William Rastetter, Cedar, Mich., for defendants.

## OPINION ON DEFENDANTS' OBJECTION TO REMOVAL, MOTION REQUESTING ABSTENTION AND ALTERNATIVE MOTION FOR REMAND

LAURENCE E. HOWARD, Bankruptcy Judge.

At a hearing before this Court on October 11, 1991, I issued an oral bench opinion granting the Defendants' request for abstention and ordering this case remanded to the Indian Tribal Court for adjudication of the Plaintiff's wrongful discharge action against the Defendants. This opinion embodies, in writing, my decision rendered at the prior hearing, and for the reasons stated herein, I find, first, that 28 U.S.C. § 1452(a) encompasses and authorizes removal to this court from tribal courts. But, based on the facts and procedural history of this case and on the need for federal courts to defer, when possible, to the autonomy of tribal courts, I now grant the Defendants' motion requesting abstention, pursuant to 28 U.S.C. § 1334(c)(1) and § 1334(c)(2), and I remand this proceeding, under 28 U.S.C. § 1452(b), to the Grand Traverse Band Tribal Court.

FACTS

The Debtor, Lewis Adams, was employed by the Economic Development Authority (hereinafter, the "EDA") for the Grand Traverse Band of Ottawa and Chippewa Indians (hereinafter, the "Band") as manager of the Grand Traverse Band Super Bingo Palace. In his employment contract, Adams agreed that all disputes arising under the contract would be resolved by the exclusive jurisdiction of the Grand Traverse Band Tribal Court (hereinafter, the "Tribal Court"). In December of 1988, Adams was suspended from his employment. The suspension was based upon allegations of mismanagement and negligence. On March 28, 1989, Adams filed a civil complaint in the Tribal Court against the EDA and against Joseph Raphael and John Petoskey, in their respective capacities as general manager of gaming operations and manager of the EDA. The Complaint sets forth breach of contract, suspension without good cause, breach of good faith and fair dealing, intentional interference with contractual relations and defamation as grounds for relief. In addition to denying the allegations raised by Adams, the Defendants, in their answer to the complaint, argued that the action against them was barred by the existence of tribal sovereign immunity.

The Band's Constitution provides that the tribal government shall be immune from suit. One of the major issues before the Tribal Court, and now, possibly before me, is whether this immunity was waived under the employment contracts of the Super Bingo Palace. Considerations of Tribal Law will decide this issue. Whichever court hears this proceeding will have to be determine whether the Tribal Constitution envisions the contractual waiver of immunity. Pursuant to a tribal resolution, Michigan law will govern the adjudication of the Debtor's state law claims if this matter is back before the Tribal Court.

On April 4, 1991, Mr. Adams and his wife filed a petition for relief under Chapter 7 of the Bankruptcy Code. On July 1, 1991, the Chapter 7 Trustee, James W. Boyd, removed the Debtor's action against the Band from the Tribal Court to this Court pursuant to 28 U.S.C. § 1452. The Trustee and Mr. Adams desire to have the wrongful discharge action adjudicated before this

Court. The Defendants object to the removal of the Debtor's action against the Band and request that this Court abstain from deciding the action or remand the case back to the Tribal Court.

DISCUSSION

Three bases for relief are set forth by the Defendants in their motion. First, the Defendants assert that removal was improperly effected by the Trustee. Next, the Defendants allege that either permissive or mandatory abstention is required under 28 U.S.C. § 1334(c). Finally, the Defendants argue that I should remand this case pursuant to 28 U.S.C. § 1452(b).

■ Since the August 1, 1991 congressional revisions, Bankruptcy Rule 9027(d) instructs me to conduct the Defendants' request for remand according to Bankruptcy Rule 9014 and render a final decision on the matter, subject to appeal. Before the new, congressional revisions of the Bankruptcy Rules went into effect, Bankruptcy Rule 9027(e), which is now 9027(d), required me to decide all motions for remand by report and recommendation to the District Court. Now, the Bankruptcy Court is empowered to render final decisions on whether to remand a removed case.

So, based on the revised Bankruptcy Rules, I find that I can fully dispose of the contentions raised by the Defendants and it is pursuant to this authority that I now grant the Defendants' request for abstention and motion to remand.

I. WAS THE DEBTOR'S ACTION PROPERLY REMOVED TO THIS COURT

28 U.S.C. § 1452(a) governs removal to this Court and provides that:

A party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under Section 1334 of this title.

■ The Defendants initially argue that removal was improperly accomplished under 28 U.S.C. § 1452(a). To begin with, three minor procedural objections are raised by the Defendants. All can be easily dismissed. First, the Tribal Defendants claim that the Trustee's petition for removal was improperly captioned as it contained the Bankruptcy Court caption instead of the Tribal Court caption. The Bankruptcy Rules make no mention as to what caption is proper on removal petitions. The Defendants have cited no authority for the proposition that removal is effective only when a tribal court caption is present. It appears that insufficient grounds exist to support the Defendants' assertion. It would be an unduly harsh result to find that removal was not accomplished based upon an improper caption. If any error did occur, it would certainly be harmless.

Next, the Defendants maintain that the removal petition was filed with the wrong clerk of courts. The Trustee filed the petition removing the Debtor's suit with the clerk for the Bankruptcy Court. Bankruptcy Rule 9027(a) states that:

[a] notice for removal shall be filed with the clerk for the district and division within which is located the state or federal court where the civil action is pending.

The Defendants contend that the literal language of 28 U.S.C. § 1452(a) and Bankruptcy Rule 9027(a) establish that removal does not occur until a petition is filed with the District Court. So, in this case, the Defendants maintain that the Debtor's action is still pending before the Tribal Court despite the fact that the file is now before me.

The majority view among the courts is that Bankruptcy Rule 9027(a) applies, as does 28 U.S.C. § 1452(a), to the resolution of this issue. *See, Murray v. On–Line Business Systems, Inc. (In Re Revco D.S., Inc.)*, 99 B.R. 768, 772 (D.N.D.Ohio 1989).

■ The District Court for the Northern District of Illinois confronted, squarely, the issue of where a petition for removal could be filed and held that both 28 U.S.C. § 1452 and Bankruptcy Rule 9027(a) envision the filing of a removal petition with the clerk for the Bankruptcy Court. *Gianakas v. Exchange Bank of Chicago (In re Gianakas)*, 56 B.R. 747 (D.N.D.Ill.1985). The Court based its decision on the fact that, as

a unit of the District Court, the Bankruptcy Court is encompassed within the broader reference to the District Court when defining the proper forum for filing a removal petition. *Id.*, at 751.

Also, 28 U.S.C. § 157(a) contains a general order authorizing referral of cases to the Bankruptcy Court. By this congressional order, it can be concluded that the handling of petitions for removal was automatically referred to the clerk for the bankruptcy court. *Id.*, at 752. 28 U.S.C. § 157(a) provides:

> [e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

Concurring with the result reached in *Gianakas*, I hold that the Trustee properly filed his Petition for Removal with the Bankruptcy Court for the Western District of Michigan. In so holding, I have the majority of cases deciding this issue supporting my conclusion. *Aztec Industries, Inc. v. Standard Oil Company (In re Aztec Industries, Inc.)*, 84 B.R. 464, 468 (Bankr.N.D.Ohio 1987) (citing the majority cases that allow the filing of a removal petition with the clerk of the bankruptcy court).

Lastly, the Defendants contend that the Trustee, in violation of Rule 9027(a), did not file copies of all process and pleadings before the Tribal Court. In reviewing the file, however, I notice that I have received and reviewed all the necessary documents for removal from the Tribal Court.

Moving to an issue of more gravity, the Defendants maintain that the Debtor's action before the Tribal Court was incapable of being removed. The Defendants claim that § 1452 does not envision or provide for removal from a Tribal Court and, additionally, that there is no jurisdiction under 28 U.S.C. § 1334 for this proceeding to be removed.

To begin with, I find that § 1452 comprehends removal from any court pursuant to the constitutionally recognized goal of enacting and realizing uniform bankruptcy law and adjudication. The Constitution, in Article I, Section 8, Clause 4, delegates to Congress the power to enact "uniform Laws on the subject of bankruptcies throughout the United States." This reveals the intent of Congress, and of the framers of the Constitution, to entrust the formation of bankruptcy law and its adjudication to the federal government.

I realize, along with the Supreme Court, that "the existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes." *National Farmers Union Insurance Co. v. Crow Tribe of Indians*, 471 U.S. 845, 855–56, 105 S.Ct. 2447, 2453–54, 85 L.Ed.2d 818 (1985). This Court must respect the autonomy of the Tribal Court. But, I find that the issue of tribal sovereignty is better placed in the consideration of abstention and remand. I hold, along with the Bankruptcy Court for the District of New Mexico, in *In re Sandmar Corporation*, 12 B.R. 910 (Bankr.D.New Mexico 1981), that the Bankruptcy Court is empowered to hear matters, despite the existence of a tribal court, that are within its jurisdiction as provided for by Congress and the Constitution. The importance placed on uniform bankruptcy laws by the Constitution and by Congress leads me to believe that removal from a tribal court to a bankruptcy court is allowed under § 1452(a) despite the lack of specific reference to tribal courts.

Removal can not take place, regardless of the court of origin, if this Court lacks subject matter jurisdiction to hear the dispute. 28 U.S.C. § 1334(a) provides for original and exclusive jurisdiction for all cases "under title 11." 28 U.S.C. § 1334(b) establishes original but not exclusive jurisdiction "for all civil proceedings arising under title 11, or arising in or related to cases under title 11." Sufficient subject matter jurisdiction exists in this Court, and removal was therefore properly effected, if the adversary proceeding before me is at least

"related to" the Debtor's Chapter 7 Bankruptcy.

■ The Debtor's action against the Tribal Defendants is considered to be related to his Chapter 7 proceeding if its outcome could conceivably have any effect upon the estate being administered in bankruptcy. *In re Salem Mortgage Company,* 783 F.2d 626, 634 (6th Cir.1986) (quoting *Mazur v. U.S. Air Duct Corp.,* 8 B.R. 848, 851 (Bankr.N.D.N.Y.1981). With this liberal definition provided by the Sixth Circuit, I find it clear that this adversary proceeding is at least related to the Debtor's bankruptcy. The outcome of the Debtor's action will affect the administration of his estate. In fact, it could be the major asset of his estate. Removal was, therefore, properly accomplished under § 1452 by the Trustee. Neither procedural defect nor lack of subject matter jurisdiction prevented this case from coming before this Court. The Defendants' objections to removal are not warranted.

## II. ABSTENTION

After establishing the jurisdiction of the Bankruptcy Courts, § 1334 goes on to delineate the circumstances when this Court should abstain from deciding a matter before it. § 1334(c)(2) provides for mandatory abstention as follows:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

■ Based on the language of this provision, six requirements must be satisfied to compel this Court to abstain:

(1) the motion requesting abstention is timely filed;

(2) the proceeding is based on a state law claim;

(3) the state court action is a "related to" proceeding;

(4) the action could not have been brought in federal court absent the Title 11 case;

(5) the action is commenced in the state court; and

(6) the action can be timely adjudicated. *See, (Marshall v. Michigan Department of Agriculture ) (In re Marshall ),* 118 B.R. 954, 958 (D.W.D.Mich.1990) (providing a similar recitation of the six factors).

■ The first requirement is met as the motion before me was timely filed. The Trustee's application for removal was filed July 2, 1991. The Defendants' objection to removal and motion for abstention or remand was filed July 23, 1991. With the lapse of only 21 calendar days, I find that the Defendants' motion was timely filed. It would have taken the interim period to learn of the removal and to prepare the motion against it. Neither the Trustee nor Mr. Adams dispute the timeliness of the Defendants' request for abstention.

Next, it is evident from reviewing the Tribal Court complaint that the Debtor's cause of action is based on state law claims. All five counts of the Debtor's complaint are state law in nature.

Determining the third requirement involves the more pernicious consideration of whether the Debtor's Tribal Court proceeding is merely "related to" his Title 11 Bankruptcy or is a "core" proceeding. If the Tribal Court proceeding is a core matter, then abstention is not required under 28 U.S.C. § 1334(c)(2).

Determining "related to" as opposed to "core" status for the Tribal Court proceeding involves looking at the post-Marathon, jurisdictional limitations placed on this Court. *See, Northern Pipeline Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The jurisdiction of the bankruptcy court is limited by 28 U.S.C. § 157(b)(1) as follows:

Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred

under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

The distinction raised in § 157 is between core and non-core matters. If the Tribal Court adversary proceeding is a core matter under the restrictive definition of § 157, then mandatory abstention is not established as a grounds for relief.

■ § 157(b)(2) provides a non-exhaustive list of what are considered to be "core" proceedings. Only § 157(b)(2)(A), which defines core proceedings to include "matters concerning the administration of the estate," applies to the Tribal Court proceeding. Certainly, the Debtor's suit against the Defendants has an effect upon the Bankruptcy Estate. But, § 157(b)(2)(A) is not that expansive. § 157(b)(2)(A) was not meant to confer core status on all proceedings having some effect on the estate. If that was the intent behind § 157(b)(2)(A), then there would be no distinction between "related to" and "core" proceedings. I now join the other judges who favor reading the examples of core proceedings in § 157(b)(2), restrictively. *In re Marshall*, 118 B.R. at 959; *In re Wood*, 825 F.2d 90 (5th Cir.1987).

The Tribal Court suit began two years before the filing of the Bankruptcy Petition and involves state law claims arising from an alleged wrongful discharge, with a defense, of sovereign immunity, raised under Tribal Law. The basis for the Debtor's action has no relation to his bankruptcy, except that the recovery could inure to the benefit of the Bankruptcy Estate. While the relationship between the Tribal Court action and the Debtor's Title 11 proceeding is sufficient to be confer "related to" status, it is not extensive enough to consider the Debtor's action a core proceeding under § 157(b)(2)(A).

Since § 157(b)(2) does not provide an exhaustive list of core proceedings, I must next examine the distinctions raised under § 157(b)(1) and determine if this adversary proceeding falls within its definition of core proceedings. § 157(b)(1) vests full judicial power in the Bankruptcy Courts over "core

proceedings arising under title 11 or arising in a case under title 11." The Tribal Court action is considered to be core only if it either "arises under" or "arises in" the context of the Debtor's Bankruptcy.

■ "Arising under core jurisdiction" is said to exist if the adversary proceeding involves a cause of action created or determined by a statutory provision of title 11. *In re Wood*, 825 F.2d at 96. Here, none of the claims in the adversary proceeding are based on or allege a cause of action dependent on the Code. The Bankruptcy Code has no impact on the Debtor's cause of action.

■ The other type of core jurisdiction, "arising in", is present if the case would not exist, but for the bankruptcy; that is, if the matter would arise only in a bankruptcy case. *D.C. Equipment v. Peshtigo National Bank (In Re D.C. Equipment)*, No. HM 86–00049, 1990 WL 102237, 1990 Bankr. LEXIS 569 (Bankr.W.D.Mich.1990). Here, the Debtor's claims were brought in the Tribal Court forum involving only state and tribal law issues. The exclusive jurisdiction of the Tribal Court was provided for in the employment agreement between the parties. This matter arose outside the context of the Debtor's bankruptcy case. "Arising in", core jurisdiction is not present.

Having decided that the adversary proceeding before me does not fall within the specifically enumerated list of Section 157(b)(2), and is not encompassed within the terms of Section 157(b)(1), I now find that the Tribal Court action is a non-core, "related to", matter under the limiting definitions of § 157 produced in the wake of the *Marathon* decision.

The employment contract called for all disputes to be adjudicated in the Tribal Court. Because of this, the Debtor originally brought his suit in Tribal Court. The fourth requirement, that there would be no federal subject matter jurisdiction without the Title 11 case, is thus met. The Debtor could not have brought his action against the Defendants in this court absent his filing for Chapter 7 relief.

The fifth requirement calls for the case to originally be filed in a state court. I think, that the purpose of § 1334(c)(2) is met by the Debtor initially filing his complaint in Tribal Court. The Debtor did not originally file in federal court, but brought his action in a separate, autonomous, court with a different jurisdiction. With the Debtor bringing his action originally in Tribal Court, the fifth requirement is met.

Lastly, § 1334(c)(2) requires that the action be capable of timely adjudication in the state, here the Tribal Court, forum. In this matter, the parties differ substantially in their impression of how quickly an action can be adjudicated in Tribal Court. The Debtor and the Trustee would have me believe that this matter has languished in Tribal Court, presenting issues too complex for the young court, while the Defendants' attorney has provided a myriad of reasons for any delay that has occurred. In reviewing the record of this proceeding before the Tribal Court, it appears to me that matters were coming before the court and were receiving proper attention. Further, I find that it would take this Bankruptcy Court a substantial amount of time to catch up on the two year history of this case and to develop a sufficient understanding of Tribal Law. The Tribal Court is capable of handling the breach of contract, defamation and sovereign immunity issues raised as competently and expediently as I can. Further, strong comity considerations compel me to allow the Tribal Court the opportunity to adjudicate the Debtor's claims.

■ With all six factors having been met, I find that abstention is required under Section § 1334(c)(2).

Before moving to consider permissive abstention, it is important to note that the Debtor commenced his action against the Tribal Defendants prior to filing his bankruptcy petition. In the case, *D.C. Equipment v. Peshtigo National Bank* (*In re D.C. Equipment*), No. HM 86–00049, 1990 WL 102237, 1990 Bankr. LEXIS 569 (Bankr.W.D.Mich.1990), I held that mandatory abstention is not permissible unless the state court action was commenced prior to the bankruptcy case.

Permissive abstention, under § 1334(c)(1) should be exercised "in the interest of justice, or in the interest of comity." The Supreme Court has repeatedly recognized the importance of tribal self-government and the autonomy of tribal courts. *Iowa Mutual Insurance Co. v. LaPlante*, 480 U.S. 9, 14, 107 S.Ct. 971, 975, 94 L.Ed.2d 10 (1987). Justice Marshall, in *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), made clear the Court's position that each recognized tribe is autonomous and should be treated with the deference given to a sovereign entity. Tribes have the power and should be allowed to make their own substantive law and to enforce that law in their own forums. *Id.*, at 55–56, 98 S.Ct. at 1675–1676.

■ The Supreme Court's position weighs heavily in favor of this Court exercising abstention with respect to the adversary proceeding. This is especially true when issues of tribal law will be involved. The Debtor's complaint raises issues of state law. But, the Defendants responded by asserting tribal sovereign immunity. Whichever court decides this action will have to consider issues of both state and tribal law. Since this adversary proceeding is only related to the Debtor's Chapter 7 case and was before the Tribal Court for two years, it would be a proper exercise of deference to allow the Tribal Court the opportunity to continue to consider the Debtor's claims and to consider whether immunity, under tribal law, was or could be waived. Comity favors deferring to the Tribal Court's jurisdiction.

The Trustee argues that there is no need for deference to the Tribal Court since Congress and the Constitution have occupied the filed of bankruptcy law to the exclusion of other courts. But, this adversary proceeding is a matter only related to Title 11 with two years of history before the Tribal Court. Unique issues of Tribal Law are involved and the contract between the parties envisions this matter being heard before the Tribal Court. Finally, the Supreme Court has expressed a preference

for the Tribal Court being the appropriate forum absent specific considerations otherwise. Here, comity and justice favor placing this adversary proceeding back before the Tribal Court.

Finally, the Tribal Court is certainly more expert than this Court. The Debtor's action was before the Tribal Court for two years prior to his filing Bankruptcy. The history of this adversary proceeding is before that forum as is the understanding of tribal management of the casinos and of the contracts that have been entered into. Also, the Tribal Court is better equipped and should be allowed to determine the extent of its jurisdiction over the Defendants.

### III. REMAND

§ 1452(b) enables the Bankruptcy Court to remand a case "on any equitable ground." The reasons discussed above for permissive abstention apply also to the consideration of equity in determining whether to remand. The Debtor brought his action against the Defendants in Tribal Court before filing for Bankruptcy. Issues of tribal law are involved and the Tribal Court was progressing in its determination of the issues raised up until the time the Debtor filed his Bankruptcy Petition. Rather than have this Court spend the time to learn the history and law that are already before the Tribal Court, equity demands that this case be remanded. The Tribal Court is the more expert court to handle the Debtor's claims and comity clearly favors deferring to the autonomy of the Tribal Court.

### CONCLUSION

I find, first, that removal did properly occur and that this court possesses subject matter jurisdiction over the Tribal Court action. But, in light of the foregoing, I grant the Defendants' request for permissive and mandatory abstention. The Defendants' Motion for Remand is also granted and this proceeding will transferred to the Tribal Court in accordance with my decision.